```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

EDWARD W. JACKSON,

         Petitioner,

**DECISION AND ORDER**
**No. 07-CV-06364T**

  -vs-

JAMES CONWAY,

         Respondent.

_____

## I.  Introduction

*Pro se* Petitioner Edward W. Jackson ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered November 17, 2004, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Burglary in the Second Degree (N.Y. Penal Law ("PL") § 140.25 [2]), Criminal Trespass in the Second Degree (PL § 140.15), and Criminal Possession of Stolen Property in the Fifth Degree (PL § 165.40).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

Shortly before 2:30 p.m. on October 21, 2003, two tenants of the Park Lane Condominium Complex located in Buffalo, New York were returning home from their tai chi class. Trial Transcript [T.T.] 359, 373. They entered the back door of the condominium complex

and entered the freight elevator, which was remotely operated by a building employee at the switchboard. T.T. 335, 339. Before the elevator door closed, Petitioner ran into the elevator, out of breath, and indicated that he was making a delivery. T.T. 320, 322, 357-358.

Dennis Zgoda ("Zgoda"), a maintenance worker at the condominium complex, saw the two tenants in the elevator and a third person, whom he did not recognize. T.T. 320. Zgoda went to the front desk and determined that no visitors had checked in, as was required by the posted sign. T.T. 323. Zgoda promptly contacted the building superintendent, Tim Miller ("Miller"), who secured the facility and directed the front desk operator to call 911. T.T. 324.

Shortly thereafter, Miller went up to the tenth floor -- the highest floor in the building -- to begin looking for the intruder. T.T. 411. On the tenth floor, Miller saw Petitioner exiting the apartment of Jacqueline Melton ("Melton"), but he was unsuccessful in his attempt to detain him. T.T. 414.

Buffalo police officers arrived at the scene in response to the 911 call. Two of the officers went up to the tenth floor in an attempt to flush the intruder down to the lobby where two other officers were waiting. T.T. 501. By the time the officers reached the fourth floor, Petitioner exited the stairwell into the front lobby where he was intercepted by Officers Valerie Perez and Lonnie Laska. T.T. 501. Petitioner was carrying a piece of mail in his

right hand, which was confiscated by Officer Perez and later determined to belong to tenant Annette Potenza ("Potenza"). T.T. 506.

In the lobby, Miller identified Petitioner as the person whom he had just seen coming out of Melton's apartment on the tenth floor. T.T. 412, 416.

The following day, Melton determined that she was missing a small bag of jewelry, which was recovered from a garbage can situated in the stairwell that Petitioner had exited the day before. T.T. 420.

Petitioner was indicted by an Erie County grand jury, which charged him with two counts of burglary in the second degree and one count of criminal possession of stolen property in the fifth degree. The indictment accused Petitioner of having unlawfully entered both the Park Lane Condominium Complex, as an entity, and a specific tenant's apartment, with the intent to commit a crime therein. Petitioner was also accused of the unlawful possession of a piece of mail belonging to tenant Potenza.

A jury trial was held before the Honorable Russell P. Buscaglia. On September 10, 2004, the jury acquitted Petitioner of the burglary of the complex itself but found him guilty of the lesser included offense of criminal trespass in the second degree. Petitioner was also convicted of the burglary count related to entry into Melton's apartment and criminal possession of stolen property.

Petitioner was sentenced as a persistent violent felony offender, pursuant to PL § 70.08, to a term of sixteen years to life on the burglary conviction.[1] He also received two definite sentences of one year for the charges of criminal possession of stolen property in the fifth degree and criminal trespass in the second degree.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on February 2, 2007. People v. Jackson, 37 A.D.3d 1091 (4th Dept. 2007). Leave to appeal was denied by the New York Court of Appeals. People v. Jackson, 8 N.Y.3d 946 (2007).

---

[1] New York's persistent violent felony offender statute (PL § 70.08) applies to defendants who stand convicted of a violent felony and have previously been convicted of two or more predicate violent felonies. Under this statute, defendants receive an indeterminate sentence of imprisonment (the maximum of which must be life), and minimum terms are prescribed by the statute and vary depending on the grade of the offense of conviction. See PL § 70.08(3).

New York's persistent felony offender statute (PL § 70.10), on the other hand, was designed to provide enhanced punishment for recidivists who fail to qualify as mandatory persistent violent felony offenders under PL § 70.08. Under this statute, sentence enhancement does not necessarily follow once a defendant is found to have the requisite prior convictions. Rather, after the defendant is determined to be an eligible recidivist, the sentencing court must conduct a hearing to determine whether "it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest." Id. at § 70.10(2); see also N.Y. Crim. Proc. Law ("CPL") § 400.20. Only if the court reaches that opinion and supports it with sufficient factual findings may the enhanced punishment be imposed. See generally Brown v. Greiner, 258 F.Supp.2d 68, 71-72 (E.D.N.Y. 2003) (explaining New York's enhanced sentencing provisions).

Notably, New York's persistent felony offender statute (PL § 70.10) was recently declared unconstitutional by the Second Circuit in Besser v. Walsh, 601 F.3d 163, 2010 U.S. App. LEXIS 6704 (2d Cir. 2010). The holding in Besser, however, does not apply to New York's persistent violent felony offender statute (PL § 70.08), which Petitioner was sentenced under in the instant case.

This habeas petition followed, wherein Petitioner seeks relief on the following grounds: (1) a Batson violation; (2) insufficiency of the evidence; and (3) erroneous jury instructions. Petition [Pet.] ¶22A-C (Dkt. #1).

**III. General Principles Applicable to Habeas Review**

    **A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted."

Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

**IV. Petitioner's Claims**

**1. Erroneous Jury Instructions**

Petitioner alleges that the trial court's "erroneous" jury instructions deprived him of his constitutional right to a fair trial and due process of law. Pet. ¶22C. Petitioner raised this claim on direct appeal, and it was rejected on state procedural grounds.[2] See Jackson, 37 A.D.3d at 1091-1092. Consequently, Petitioner's claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's contemporaneous objection rule, specifically citing New York Criminal Procedure Law ("CPL") § 470.05(2), to deny Petitioner's claim because the issue had not been properly preserved for appellate review. See Jackson, 37 A.D.3d at 1091-1092.

---

[2] Notably, the Appellate Division, Fourth Department also rejected this claim, in the alternative, on the merits, finding that: "[i]n any event, we conclude that defendant's challenge lacks merit. The jury instruction at issue was in accord with the model charge set forth in 1 CJI(NY) 11.01 (at 656), which should be given when a defendant's statements are admitted in evidence in order to establish the defendant's guilt." Jackson, 37 A.D.3d at 1092 (internal citations omitted).

-8-

The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). The Appellate Division's reliance on CPL § 470.05(2) is an independent and adequate state ground, barring this Court's review of Petitioner's claim that the trial court's "erroneous" jury instructions deprived him of a fair trial and due process of law.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice attributable thereto," or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice (i.e., that he is actually innocent).

Accordingly, habeas relief is unavailable to Petitioner, and his claim is dismissed.

**2. Legally Insufficient Evidence**

Petitioner asserts that the evidence was not legally sufficient to support his convictions for criminal trespass (related to the condominium complex) and burglary (related to

Melton's apartment). Specifically, he argues that the prosecution failed to prove beyond a reasonable doubt that Petitioner knowingly entered or remained unlawfully in the condominium complex and/or Melton's apartment. Pet. ¶22B. Petitioner raised this claim on direct appeal, and it was rejected on the merits. See Jackson, 37 A.D.3d at 1091.

A petitioner who challenges the sufficiency of the evidence to support his conviction faces a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). The standard to be applied on habeas review when the claim of legally insufficient evidence is made is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In making this assessment, the court must "credit every inference that could have been drawn in the state's favor . . . whether the evidence being reviewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir.), cert. denied, 488 U.S. 929 (1988).

Here, Petitioner argues that the evidence was legally insufficient to prove that he knowingly entered or remained unlawfully in the condominium complex and/or Melton's apartment. As the Supreme Court has instructed, the Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the

evidence. The Court finds that there was ample evidence upon which a rational jury could have found beyond a reasonable doubt that Petitioner's conduct established the essential elements of the crimes of criminal trespass in the second degree and burglary in the second degree. The evidence adduced at trial established the following: that the residential condominium building was only open to residents, vendors and visitors who signed in at the front desk; that Petitioner was not a resident, a vendor, or a visitor, and that he entered the condominium building without signing in at the front desk or otherwise obtaining permission to enter the building; that Petitioner entered a freight elevator with two tenants and indicated that he was making a delivery; that the building superintendent saw Petitioner leaving the tenth floor apartment of Melton; that Petitioner ran away from the superintendent, but was caught in the stairwell leading into the front lobby; and that Melton's jewelry was recovered in the same stairwell the following day. T.T. 310, 314-315, 319-326, 359-363, 391-395, 409-415, 420.

Accordingly, the Court cannot find that the state court's determination of this issue contravened or unreasonably applied <u>Jackson v. Virginia</u>. Petitioner's sufficiency of the evidence claim related to his criminal trespass and burglary convictions is dismissed.

### 3. **<u>Batson</u> Challenge**

Petitioner argues that the prosecutor violated the precepts of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) by exercising a peremptory

challenge to a prospective African-American juror (Juror #8). Pet. ¶22A. Petitioner raised this claim on direct appeal, and it was rejected on the merits.[3]

The federal constitution prohibits both the prosecution and defense from exercising peremptory challenges in a racially discriminatory manner. Georgia v. McCollum, 505 U.S. 42 (1992); Batson v. Kentucky, 476 U.S. 79 (1986). The determination of whether a party has exercised peremptory challenges in a discriminatory manner entails a three-step process: (1) a defendant must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race; (2) if that showing had been made, the prosecution must offer a race-neutral basis for striking the juror in question; and (3) in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. See Batson, 476 U.S. at 96-98.

In the instant case, the record reflects that Juror #8, when challenged by the prosecution, indicated that she had approximately twenty friends and family members who had been "charged with

---

[3] The Appellate Division, Fourth Department found that: "[d]efendant contends that there was a Batson violation based on the failure of the prosecutor to offer a race-neutral explanation for her exercise of a peremptory challenge with respect to a black prospective juror. We reject that contention. The prospective juror at issue stated that she knew 20 people who had been prosecuted for various crimes in western New York. The prosecutor explained that, because most of those people would have been prosecuted by the District Attorney's office, she was concerned about the ability of the prospective juror to be fair, regardless of her protestations to the contrary. We conclude that the prosecutor offered a race-neutral explanation for her exercise of a peremptory challenge with respect to the prospective juror." Jackson, 37 A.D.3d at 1091.

crimes" for "drug possession, misdemeanors" in the Western New York area, and that some of these individuals had been prosecuted by the Erie County District Attorney's Office. T.T. 86-87. The prospective juror also stated that she believed that, in some instances, those arrested had been inappropriately singled out by the police, but that these individuals could not prove that they were singled out. The following exchange occurred between defense counsel and Juror #8:

> Defense Counsel: Thank you. You've -- you're kind of in an interesting position. You've been both the victim, correct, of a crime, and you know individuals who have been accused and so neither of those extremes are going to pull on you here in this week coming up with regard to this case?
>
> Juror #8: Not really. I mean, I see a lot of injustice for a lot of people. I seem to be the only person who follows the law. But I also seen a lot of people that do things.
> Defense Counsel: So both sides. You've seen victims and you've seen defendants and the defendants, did you see anyone -- I believe your -- not testimony, your statement was that some individuals either family members or friends are in jail, correct?
>
> Juror #8: Yes.
>
> Defense Counsel: Now, again, I think the Assistant District Attorney alluded to it a little bit. Do you feel as though the system was against them, that there was no way for them to get a fair shake, so to speak?
>
> Juror #8: No. No.
>
> Defense Counsel: Do you believe that the police officers singled them out because of race or anything of that nature?

> Juror #8: There has been instances where they have, but I mean, they couldn't prove so, you know.
>
> Defense Counsel: But is that going to -- are you going to carry that into this jury deliberations?
>
> Juror #8: No.

T.T. 147-149.

Following the prosecutor's exercise of the peremptory challenge to Juror #8, defense counsel objected to the use of the peremptory challenge under Batson. The court found that defense counsel had met his burden of a *prima facie* showing, thereby compelling the prosecutor to provide a race-neutral explanation. T.T. 160-162.

The prosecutor then explained that she challenged Juror #8 because Juror #8 stated that she had approximately twenty friends and family members that had been convicted by the Erie County District Attorney's Office, and that Juror #8 believed that, in some instances, the friends and family members had been singled out by the police. T.T. 162. When offered the opportunity to respond to the prosecutor's race-neutral reason, defense counsel asserted that Juror #8 was no different from any other prospective juror except for her race and that she had both been a victim of crimes and had known people who were arrested. T.T. 164. Defense counsel also noted that Juror #8 had "unequivocally" stated that none of her experiences as a victim or as knowing defendants would "enter

-14-

into deliberations whatsoever." T.T. 164. The court denied the Batson challenge, stating that:

> she does know a lot of defendants. Her best estimate was a number of twenty who have been charged with crimes. That those were prosecuted by [the Erie County District Attorney's Office] or they were from the area where [juror #8] was -- that she did say she saw instances of people singled out by the police. And in addition, which hasn't been mentioned here, that she has seen a lot of injustice in Buffalo. Of course, we all know that this crime allegedly took place in Buffalo. For all those reasons, I believe that [the prosecutor] has met her burden.

T.T. 164.

The Second Circuit has held that race or gender neutral explanations based on the fact that a relative of a prospective juror had been arrested or convicted of a crime are acceptable under Batson. See Green v. Travis, 414 F.3d at 300-01 (2d Cir. 2005) (accepting as a satisfactory race-neutral reason for peremptory strike the prosecutor's explanation that the prospective jurors had relatives who had been convicted of drug offenses); Jordan v. Lefevre, 293 F.3d 587, 594 (2d Cir. 2002) ("Nor do we see error in the district court's finding that [the prosecutor's] exercise of five of the State's peremptory challenges against blacks was not motivated by their race. [The prosecutor] offered race-neutral reasons for each of those challenges. It was not impermissible for the district court to credit his explanations that he viewed [one juror] as potentially having animosity toward the police because of [that juror]'s view that the police had

-15-

unfairly arrested and beaten his brother[.]"); U.S. v Lawal, 129 F.3d 114 (Table) 1997 U.S. App. LEXIS 37100 (2d Cir. 1997) ("Both jurors were challenged on the basis of family criminal histories, and one juror was also challenged on the basis of his age and demeanor. These bases are well-accepted, facially race-neutral reasons.") (unpublished opinion).

In the present case, the prosecutor's proffered reason was race-neutral, and not otherwise vague or facially questionable. Green, 414 F.3d at 301 (citing, *inter alia*, Batson, 476 U.S. at 98 (holding that in articulating race-neutral justifications for exercising peremptory strikes, the prosecutor may not simply deny "that he had a discriminatory motive" or affirm his "good faith" in selecting jurors, but rather must "articulate a neutral explanation related to the particular case to be tried")). The record amply supports the prosecutor's reason for peremptorily striking Juror #8, especially since she expressed a belief that police sometimes single people out for arrest or prosecution.

Turning to the third step of the Batson inquiry, a trial court's finding as to whether the prosecutor intentionally discriminated on the basis of race when exercising a peremptory strike is a factual finding entitled to appropriate deference by a reviewing court. Batson, 476 U.S. at 98 n. 21 (citation omitted); accord, e.g., Jordan v. Lefevre, 293 F.3d at 593. Since the trial judge's conclusions during the type of inquiry contemplated by Batson "largely will turn on evaluation of credibility," the

Supreme Court has instructed that reviewing courts "ordinarily should give those findings great deference." Id. (citing Anderson v. Bessemer City, 470 U.S. 564, 575-76 (1985)). Petitioner has provided no basis for this Court to reject the trial judge's findings. The trial court heard argument on the peremptory strike of Juror #8, and gave defense counsel the opportunity to respond. T.T. 160-164. In sum, the trial court conducted a "meaningful inquiry into 'the decisive question . . . whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" Jordan v. LeFevre, 206 F.3d 196, 201 (2d Cir. 2000) (quoting Hernandez v. New York, 500 U.S. 352, 365 (1991). Accordingly, the Appellate Division's rejection of Petitioner's Batson claim was not an unreasonable application of or contrary to clearly established Supreme Court precedent. The claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                            S/Michael A. Telesca

                                            _____
                                            HONORABLE MICHAEL A. TELESCA
                                            United States District Judge

DATED:    May 18, 2010
            Rochester, New York